01

02

03

04

05

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

06

07 DAVID M. SHAW,                                )
                                                )   CASE NO. C13-2073-BJR-MAT
08         Plaintiff,                           )
                                                )
09         v.                                   )   REPORT AND RECOMMENDATION
                                                )   RE: SOCIAL SECURITY
10 CAROLYN W. COLVIN, Acting                     )   DISABILITY APPEAL
   Commissioner of Social Security,             )
11                                              )
           Defendant.                           )
12 _____ )

13         Plaintiff David M. Shaw proceeds through counsel in his appeal of a final decision of

14 the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

15 denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

16 Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative

17 record (AR), and all memoranda of record, the Court recommends that this matter be

18 REVERSED and REMANDED for additional proceedings.

19                          **FACTS AND PROCEDURAL HISTORY**

20         Plaintiff was born on XXXX, 1953.[1]  He graduated from high school and completed

21

22         1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule
   of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic

01  some community college courses, and previously worked as a sales delivery driver and art

02  framer.  (AR 1061, 1111.)

03       Plaintiff filed an application for DIB on June 7, 2006, alleging disability beginning

04  April 29, 2005.  (AR 124-26.)  His application was denied at the initial level and on

05  reconsideration.  (AR 116-17, 119-21.)

06       On February 14, 2008, ALJ Arthur Joyner held a hearing, taking testimony from

07  Plaintiff, a medical expert, and a vocational expert.  (AR 1057-114.)  On April 16, 2008, the

08  ALJ issued a decision finding Plaintiff not disabled.  (AR 31-43.)  On July 2, 2010, the

09  Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and

10  remanded the matter for additional proceedings.  (AR 47-51.)  While the Appeals Council

11  request had been pending, Plaintiff filed a subsequent DIB application and was found disabled

12  at the initial level on May 31, 2010, as of April 17, 2008.  (AR 15, 52.)

13       When the matter was remanded to ALJ Cheri Filion, she held a second administrative

14  hearing on July 7, 2011, and heard testimony from Plaintiff, a disability fraud investigator, a

15  medical expert, and a vocational expert.  (AR 1115-239.)  On December 19, 2011, the ALJ

16  issued a decision reopening the initial determination of disability, and finding that Plaintiff

17  had never been disabled at any time between the alleged onset date of April 29, 2005, through

18  his date last insured of December 31, 2010.  (AR 15-28.)

19       Plaintiff timely appealed.  The Appeals Council denied Plaintiff's request for review

20  on September 17, 2013 (AR 4-6), making the ALJ's decision the final decision of the

21   

22  Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United
    States.

REPORT AND RECOMMENDATION
PAGE -2

01    Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

02    **JURISDICTION**

03         The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

04    405(g).

05    **DISCUSSION**

06         The Commissioner follows a five-step sequential evaluation process for determining

07    whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

08    must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had

09    not worked after the alleged onset date, April 29, 2005.  (AR 18.)  At step two, it must be

10    determined whether the claimant suffers from a severe impairment.  The ALJ found severe

11    Plaintiff's disc syndrome status post laminectomy and discectomy fusion.  Step three asks

12    whether a claimant's impairments meet or equal a listed impairment.  (AR 18-20.)  The ALJ

13    found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment.

14    (AR 20.)

15         If a claimant's impairments do not meet or equal a listing, the Commissioner must

16    assess residual functional capacity (RFC) and determine at step four whether the claimant

17    demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff able to

18    perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b), but limited to frequent

19    handling and reaching.  (AR 20-27.)  With that assessment, the ALJ found Plaintiff capable of

20    performing his past work as an art framer, and did not proceed to step five.  (AR 27-28.)

21         This Court's review of the ALJ's decision is limited to whether the decision is in

22    accordance with the law and the findings supported by substantial evidence in the record as a

REPORT AND RECOMMENDATION
PAGE -3

01  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

02  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

03  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

04  F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

05  supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

06  F.3d 947, 954 (9th Cir. 2002).

07        Plaintiff argues the ALJ erred in (1) assessing the medical expert's testimony to find

08  that Plaintiff does not meet Listing 1.04; (2) assessing his credibility/RFC, (3) assessing the

09  opinions of treating physicians Jens Chapman, M.D., and Marguerite McNeely, M.D.; and (4)

10  finding that he is capable of performing his past work as actually performed.  He asks that the

11  ALJ's decision be reversed and his claim remanded for an award of benefits or, in the

12  alternative, for further proceedings.  The Commissioner concedes that the ALJ's decision

13  contains some errors, but argues that the errors are harmless and the decision should be

14  affirmed.

15                                    Listing 1.04

16        At step three, the ALJ considers whether one or more of a claimant's impairments

17  meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations.  The

18  Listing of Impairments (the "listings") describes specific impairments of each of the major

19  body systems "which are considered severe enough to prevent a person from doing any

20  gainful activity." *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999); *see* 20 C.F.R. §

21  404.1525.  Each listing sets forth the "symptoms, signs, and laboratory findings" that must be

22  established in order for claimant's impairment to meet the listing.  *Tackett*, 180 F.3d at 1099.

01  If a claimant meets or equals a listing, the claimant is found disabled without further inquiry.

02  If not, the analysis proceeds to the next steps of the evaluation.

03      Medical expert Darius Ghazi, M.D., testified at the administrative hearing, and the

04  ALJ purported to give significant weight to his testimony:

05      At the hearing, Dr. Ghazi testified that the claimant's condition was not of
        listing-level severity given his level of activity, including flying, which Dr.
06      Ghazi noted was particularly difficult in terms of back pain.  Dr. Ghazi was not
        privy to the covert surveillance tapes, but when questioned specifically about
07      the activities that were identified in the medical records, he noted that long
        flights were difficult for people with no back impairments and the claimant's
08      ability to regularly fly on long flights and engage in other physical activities[]
        militated against a conclusion that the claimant's back impairment was of
09      listing level severity.

10          . . .

11      I have [] given significant weight to . . . Dr. Ghazi's [] recent hearing testimony
        that, based on the claimant's capacity for airline travel and other activities of
12      daily living, his back condition was not of listing-level severity. . . . Dr. Ghazi
        [is a] board-certified medical expert, and [his] opinion[ is] consistent with the
13      claimant's solid fusion and lack of significant nerve root compromise.

14  (AR 22, 25.)  Plaintiff argues and the Commissioner concedes that the ALJ erred in relying

15  upon Dr. Ghazi's testimony that his activities militated against a finding that Plaintiff met

16  Listing 1.04, because that listing does not include daily activities as one of its elements.  *See*

17  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  The Commissioner argues that the ALJ's error in

18  construing Dr. Ghazi's opinion is harmless, however, because Dr. Ghazi's testimony was

19  equivocal as to whether Plaintiff met the actual elements of Listing 1.04.  Dkt. 18 at 18-19.

20      The Commissioner's harmless-error argument relies upon a misleading excerpt of the

21  hearing transcript, however.  The Commissioner quotes Dr. Ghazi's first answer to counsel's

22  query whether the clinical findings in particular exhibits satisfy the elements of Listing 1.04.

REPORT AND RECOMMENDATION
PAGE -5

01   Dkt. 18 at 18 (quoting AR 1156).  Dr. Ghazi's first answer is non-responsive to the question,

02   focusing on how people experience pain differently, and counsel asked the question again,

03   and Dr. Ghazi stated unequivocally that he interpreted the clinical findings in the cited

04   exhibits to satisfy the elements of Listing 1.04.  (AR 1156.)  Earlier in the hearing, Dr. Ghazi

05   had also informed the ALJ unequivocally that the medical evidence establishes that Plaintiff

06   met Listing 1.04.   (AR 1141.)   The Commissioner does not address this unambiguous

07   testimony when dismissing "Plaintiff's suggestion that Dr. Ghazi's testimony demonstrates

08   that he was clearly disabled at step three[.]"  Dkt. 18 at 19.  Because the ALJ's assessment of

09   Dr. Ghazi's testimony mischaracterizes his testimony, and fails to acknowledge that Listing

10   1.04 does not require any particular activity restriction, the ALJ shall reconsider Dr. Ghazi's

11   testimony on remand to analyze the actual elements of Listing 1.04.[2]

12          Plaintiff further argues and the Commissioner concedes that the ALJ erred in failing to

13   acknowledge Dr. Ghazi's testimony that he agreed with medical opinions limiting Plaintiff to

14   less than sedentary work, and that Plaintiff's pain medication would affect his concentration.

15   Dkt. 18 at 19.  The Commissioner contends this error is harmless because the ALJ rejected the

16   opinions Dr. Ghazi agreed with, and because the ALJ herself addressed Plaintiff's medication

17   side effects.  *Id.*  The Court agrees with the Commissioner that because the ALJ addressed the

18   ───────────────

19          2 The ALJ repeatedly stated in her decision that Plaintiff's medical records did not contain
     clinical findings that he satisfied any of the alternate elements of Listing 1.04, particularly significant
20   nerve root compromise.  *See* AR 20, 23-26.  Therefore, it is not clear that even if Dr. Ghazi's
     testimony were credited, a finding of disability at step three would have followed.  Accordingly,
21   remand for additional proceedings is appropriate, rather than remand for payment of benefits.  *See*
     *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002) (holding that remand for payment of
22   benefits is appropriate where, *inter alia*, there are no outstanding issues that must be resolved before
     finding the claimant disabled, and it is clear that the ALJ would be required to find the claimant
     disabled if the erroneously rejected evidence was credited).

REPORT AND RECOMMENDATION
PAGE -6

01 specific evidence Dr. Ghazi discussed, and explained why she interpreted it differently, her

02 failure to explicitly address her departure from Dr. Ghazi's opinion is harmless error.  *See* AR

03 23-24, 26.

04 Credibility

05     In assessing credibility, an ALJ must first determine whether a claimant presents

06 "objective medical evidence of an underlying impairment 'which could reasonably be

07 expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d

08 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

09 Given presentation of such evidence, and absent evidence of malingering, an ALJ must

10 provide clear and convincing reasons to reject a claimant's testimony.  *Id*.  *See also Vertigan*

11 *v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).   There are "two grounds for using daily

12 activities to form the basis of an adverse credibility determination[,]" including (1) whether

13 the activities contradict the claimant's testimony and (2) whether the activities "meet the

14 threshold for transferable work skills[.]"  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

15     Plaintiff challenges the ALJ's adverse credibility determination on the basis that her

16 findings as to his daily activities do not show that he can perform light work.  Dkt. 14 at 8-10.

17 This argument is based on a misunderstanding of the ALJ's decision.  The ALJ described

18 Plaintiff's daily activities in explaining why she found that they contradicted his allegations:

19 she described the various activities — including community and neighborhood activities,

20 traveling overseas on multiple occasions, driving, working in his yard, maintaining a

21 photography hobby, and pushing/carrying heavy items — that she found to be inconsistent

22 with his allegations of disabling back pain, and specifically his allegations that he could not

01  engage in activities that he claimed or was seen elsewhere to be able to perform.  (AR 21-25.)

02  The ALJ did not cite Plaintiff's activities as evidence of capabilities transferable to a work

03  setting, and thus his argument that she erred in doing so is misplaced.  Although Plaintiff

04  disputes some of the ALJ's inferences in interpreting the evidence of his activities, he has not

05  established that any of the ALJ's findings were unreasonable.  Even if the evidence could

06  reasonably be interpreted in the way Plaintiff posits, he has not established that the ALJ's

07  findings are unreasonable, and they should therefore be affirmed.  *See Morgan v. Comm'r of*

08  *the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible

09  to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

10  <u>Medical Opinion Evidence</u>

11          In general, more weight should be given to the opinion of a treating physician than to a

12  non-treating physician, and more weight to the opinion of an examining physician than to a

13  non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

14  contradicted by another physician, a treating or examining physician's opinion may be

15  rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d

16  1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion

17  may not be rejected without "'specific and legitimate reasons' supported by substantial

18  evidence in the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499,

19  502 (9th Cir. 1983)).

20  A.      <u>Dr. Chapman</u>

21          Plaintiff assigns error to the ALJ's assessment of Dr. Chapman's October 2006

22  opinion, which reads:

REPORT AND RECOMMENDATION
PAGE -8

01                Structurally stable spine, no major central or foraminal compromise and no
significant interval changes.  At this time, the patient is cleared for any and all

02                physical activity in terms of light duty, swimming.  Due to chronic pain, he is
unable to pursue regular employment.  I have recommended swimming and

03                trunk exercises.  The patient is welcome to return for an annual followup.

04  (AR 392.)  The Appeals Council remand order instructed the ALJ specifically to consider Dr.

05  Chapman's opinion that "due to chronic pain, [Plaintiff] is unable to pursue regular

06  employment." (AR 49.)  The ALJ addressed Dr. Chapman's opinion as follows:

07                Pursuant to the remand order, I have considered Dr. Chapman's accompanying
statement that the claimant could not pursue his regular employment ([AR

08                392]).  I have given little weight to that portion of Dr. Chapman's opinion.
First, the record is unclear as to what Dr. Chapman believed was the claimant's

09                usual line of work at the time.  More significantly, the claimant's wide range of
activities of daily living, including performing yard work and other light to

10                medium exertional tasks, is consistent with an ability to perform his past work
as an art framer, described in detail below.  Additionally, Dr. Chapman's

11                opinion that the claimant could not pursue his regular employment was
apparently based in large part on the claimant's self-report, but, as noted, he is

12                not entirely credible.

13  (AR 25.)  Plaintiff contends that the ALJ erred in assuming that Dr. Chapman's use of the

14  phrase "light duty" referred to "light work" as defined by the Social Security regulations, in

15  assuming that Dr. Chapman referred to Plaintiff's past work when referring to "regular

16  employment," and in finding that Dr. Chapman's opinion was based on non-credible self-

17  report.  Dkt. 14 at 20-21.

18        The ALJ's assessment of Dr. Chapman's opinion does not necessarily depend on the

19  assumptions Plaintiff describes.  The ALJ identified how Dr. Chapman's opinion that Plaintiff

20  was unable to work was inconsistent with his level of activity — whether that activity

21  demonstrated an ability to perform "light" work or not — which is a sufficient reason to

22  discount a physician's opinion.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

REPORT AND RECOMMENDATION
PAGE -9

01  (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the

02  claimant's level of activity).  Although the wording of Dr. Chapman's opinion suggests that

03  he considered "regular employment" to refer to work in general rather than specifically

04  Plaintiff's past jobs, such an opinion would nonetheless be inconsistent with the ALJ's

05  finding that Plaintiff could perform his past work.

06      Furthermore, Plaintiff misapprehends the ALJ's point in noting his lack of credibility.

07  Dr. Chapman's opinion indicates that Plaintiff's clinical findings clear him for physical

08  activity, and that his limitations are caused by chronic pain, which was subjectively reported.

09  (AR 392.)  Given that the ALJ found that Plaintiff's subjective reporting was not entirely

10  credible, the ALJ did not err in discounting Dr. Chapman's opinion to the extent that he relied

11  on Plaintiff's non-credible self-report.  *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d

12  1219, 1228 (9th Cir. 2009).  Because the ALJ provided specific and legitimate reasons to

13  discount Dr. Chapman's opinion, her assessment should be affirmed.

14  B.   Dr. McNeely

15      Dr. McNeely began treating Plaintiff in 1998 and provided opinions regarding his

16  functioning in February 2008, August 2008, and July 2011.  (AR 602-05, 792, 1052-56.)  The

17  ALJ assessed those opinions as follows:

18      I have also given little weight to Dr. McNeely's assessments from February
    2008, August 2008, and July 2011, which generally indicate that the claimant
19      was unable to sustain work on a regular and continuing basis due to his
    inability to sit or stand for prolonged periods of time without incapacitating
20      back pain ([AR 602-05, 792, 1052-56]). . . .  Such severe limitations are
    inconsistent with the claimant's activities of daily living as described in the
21      [Cooperative Disability Investigations Unit] investigation reports and the
    medical evidence of record, including performing yard work and sitting on
22      prolonged plane rides to Hawaii and other overseas destinations.  Nor has

REPORT AND RECOMMENDATION
PAGE -10

01       diagnostic testing revealed any significant nerve root compromise ([AR 391-92, 650-87]).  The assessments were based primarily on the claimant's self-report of unrelenting, incapacitating pain, but, as noted above, he is not entirely credible.  Dr. Smith testified at the initial hearing that the objective clinical findings were not consistent with the degree of pain that the claimant alleged ([AR 1085-110]), and there is no evidence of any significant change or deterioration in his condition since that time.

05 (AR 26.)   The ALJ's reasons for discounting Dr. McNeely's opinions are specific and

06 legitimate.   As noted above, and ALJ properly discounts a physician's opinion that is

07 inconsistent with a claimant's activities.  *See Rollins*, 261 F.3d at 856.  Furthermore, the ALJ

08 properly discounted the credibility of Plaintiff's self-reports, and thus to the extent that Dr.

09 McNeely's opinions relied on Plaintiff's descriptions of his subjective pain, the ALJ properly

10 discounted Dr. McNeely's opinion. *See Bray*, 554 F.3d at 1228.  Finally, the ALJ identified a

11 way in which Dr. McNeely's opinions were inconsistent with previous testimony from a

12 medical expert, and this inconsistency is a valid reason to discount Dr. McNeely's opinions.

13 *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding it not improper for an

14 ALJ to reject an opinion presenting inconsistencies with the medical record).

15       Plaintiff's contentions that the ALJ erred by not discussing Dr. McNeely's opinions in

16 sufficient detail, or by failing to recognize that her opinions were consistent with other

17 rejected opinions, fail to identify any basis for finding the ALJ's assessment to be erroneous,

18 rather than simply unfavorable to Plaintiff.   *See* Dkt. 14 at 21.   The Court also rejects

19 Plaintiff's arguments that the ALJ's assessment of Dr. McNeely's opinion was based on an

20 erroneous interpretation of Plaintiff's activities, for reasons explained in the previous section,

21 *supra*.  Because the ALJ provided specific and legitimate reasons to discount Dr. McNeely's

22 opinions, her assessment should be affirmed.

01                                    Step Four

02         The ALJ found that Plaintiff can perform his past work as an art framer as actually

03   performed.  (AR 27-28.)  A claimant may be found not disabled at step four based on a

04   determination that she can perform past relevant work as it was actually performed or as it is

05   generally performed in the national economy.  Social Security Ruling 82-61, 1982 WL 31387,

06   at *1-2 (Jan. 1, 1982).  Plaintiff argues that his description of his former job duties exceeded

07   his light-work RFC, because he stood and/or walked for more than six hours per eight-hour

08   workday when he was employed as an art framer.  (AR 143, 630.)

09         The Commissioner concedes that the ALJ's as-actually-performed finding is

10   erroneous, but argues that this error is harmless because substantial evidence in the record

11   supports a finding that he could perform the job as generally performed.  Specifically, the

12   Commissioner cites the ALJ's and vocational expert's (VE) reference to the art framer job as

13   defined by the Dictionary of Occupational Titles ("DOT"), which suggests that the ALJ and

14   VE contemplated how the job was generally performed in the national economy.  (AR 27-28,

15   1233-35.)  *See Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001) (holding that the

16   DOT is the best source for determining how a past job is generally performed).

17         Plaintiff objects to this argument as a "post-hoc rationalization" (Dkt. 19 at 2-3), but

18   fails to appreciate that this is the type of analysis *required* when considering whether an error

19   is harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be

20   deemed harmless where it does not alter the outcome of the case).  In order to determine

21   whether an error is harmless, a court must consider whether an ALJ would have reached the

22   same result absent the error, and that inquiry implicates arguments not relied upon or made by

01 the ALJ.  Accordingly, because the ALJ and VE suggested that a person limited to light work

02 could perform the art framer job as defined by the DOT, substantial evidence would support a

03 finding that Plaintiff could perform the art framer job as generally performed.  The ALJ's

04 step-four error is harmless.

05                                             CONCLUSION

06         For the reasons set forth above, the Court recommends this matter should be

07 REVERSED and REMANDED for additional proceedings.

08         DATED this 27th day of June, 2014.

09

10 

                                              Mary Alice Theiler
11                                             Chief United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -13